THOMAS W. VOSE *vs.* INHABITANTS OF FRANKFORT.

*Effect of division of town, and commissioner's report. Tax.*

Under the provisions of the act of 1867, c. 291, setting off a part of Frankfort, the inhabitants set off, for the purpose of paying the debts of the town as therein specified, remain subject to taxation with its incidents and liabilities, the same as if the act had not passed.

The report of the commissioner appointed to determine the indebtedness of the town is conclusive upon the parties as to all things upon this subject contained in it.

The orders reported by him as contingent claims, though void, so far as they represent existing indebtedness, may be substituted by that indebtedness;—and that being valid, its proportional part may be assessed upon the territory set off.

Those orders, so far as they represented bounties payable under the vote of January 28, 1865, may be changed for these bounties, these being valid claims.

The expense of collecting and the necessary abatements, are incidents of a tax and proper to be taken into consideration in fixing the amount to be raised for a given purpose.

A town or its officers duly authorized may settle a disputed claim against it, and doing so in the exercise of good faith, and sound discretion, may enforce a tax duly assessed upon its citizens to raise money for its payment.

ON REPORT.

ASSUMPSIT, to recover a tax assessed by the town of Frankfort upon property situated in that part of Winterport which was set off to it from Frankfort, under act of 1867, c. 291; paid under protest to avoid a distraint of property. The grounds upon which the tax was claimed to be illegal are stated in the opinion.

*T. W. Vose* in his own behalf.

The act of division provides that the indebtedness of Frankfort shall be determined, and Mr. Woodman was appointed to determine it.

The legislature have a right to make such an apportionment of the existing indebtedness between the old and new towns as to it appears equitable; but if it makes none, the old town must pay all the debt. *Frankfort* v. *Winterport*, 54 Maine, 250; *Windham* v. *Portland*, 4 Mass., 384; *North Yarmouth* v. *Skillings*, 45 Maine, 133; *Granly* v. *Thurston*, 23 Conn., 406.

It was only those liabilities that were "determined" by the finding of the commissioner that the territory set off was to bear any part of; not that, or any portion of it, which he was unable to determine, because doubtful if it ever accrued. The disputed items are:

I. The percentage which the territory is to pay. Mr. Woodman fixed it at .38,982, but the assessment makes it .3954,—a difference of $51.02 against those living upon the territory.

II. The costs paid to Belfast upon an execution issued in its favor against Frankfort, not included in the commissioner's report, nor proved to be an existing liability when the division of towns was made. The execution is for eighteen dollars, of which $7.02 is assessed upon this territory. ·

III. The principal item is the soldiers' bounties, $3,345.17; of which $1,304.01 is demanded from the tax-payers of the set-off. Though the town meeting of January 28, 1865, was legal, and those of February 8, and March 6, 1865, illegal, yet it was only the orders issued under the votes passed at these latter meetings that are included in Mr. Woodman's report; the payment of

which was perpetually enjoined in *Clark* v. *Wardwell*, 55 Maine, 61. Any certain or uncertain liability under the votes to pay bounties passed at the meeting of January 28, 1865, was not included in the commissioner's report, because none was then supposed to exist, the meeting of February 8, 1865, at which the votes of January 28, 1865, were rescinded not having then been ascertained to be illegal. The liability mentioned was solely upon these void orders.

*N. H. Hubbard* for the defendants.

DANFORTH, J. This is an action to recover all or a part of a tax assessed upon the plaintiff's property and collected of him by the defendant town. The only question raised is whether the tax, or any portion of it, was for "money not raised for a legal object."

By a special act of the legislature of 1867, c. 291, a part of Frankfort was set off and annexed to the town of Winterport. By § 3 of said act, "the territory thus set off and the inhabitants thereon, with estates, shall pay their just proportion of the present indebtedness of Frankfort over its assets, . . and shall also pay five thousand dollars additional." These sums were to be assessed by the assessors and collected by the collector of Frankfort from time to time "the same as if this act had not passed."

The plaintiff owned property upon the territory, and upon that property this tax was assessed in 1874. It will thus be seen that this plaintiff with the other tax-payers upon this territory, so far as regards the assessment of taxes for the payment of this debt, retained the same relation to the town of Frankfort after the set-off as before.

In pursuance of the authority in this act, Frankfort made annual assessments upon this territory up to and including the year 1874. The plaintiff claims that the whole debt, and more, was paid by the assessment of 1873, and hence the tax of 1874, now in question, was not for a legal object. On the other hand, the defendants claim that the tax of 1874 is no more than sufficient to pay the amount due ; and to show this, have produced an ac-

count with said territory which, if correct, substantiates their position.

Without stopping to inquire whether the plaintiff has selected his proper remedy, we shall examine the issue thus presented by the parties upon its merits.

By § 4 of the act referred to, Theodore C. Woodman was appointed a commissioner to determine the liabilities and assets of the town of Frankfort, and to make a written report to each town of the certain liabilities and assets, also the number and nature of the liabilities and assets, "the precise amount of which cannot be determined, and the proportion which the territory and inhabitants hereby set off, shall pay when determined, as provided in the preceding section."

Under this authority, Mr. Woodman heard the parties, and made his report. To this report, so far as appears, no objection has been heretofore, or is now made. It is therefore conclusive upon the parties as to all things contained in it. It is the judgment of a tribunal to whose jurisdiction the parties voluntarily submitted, and from which they make no appeal.

The account upon which the defendants have made their several assessments, including that of 1874, is made up on the debit side, mainly from this report. Several of the items contained in it are objected to, and if the objections are well founded, the tax in question, to that extent was improperly assessed. The principal item in this class is found under date of April 8, 1871, and is for $3345.17 paid for bounty claims. The proportional part of this, assessed upon the territory, is $1304,01, and it is conceded that this sum is correct if the whole amount is allowable as a debt of Frankfort under the act of separation. It appears that this sum was paid under a vote of Frankfort passed March 6, 1871, which vote was predicated upon an alleged liability of the town, by virtue of a vote passed January 28, 1865. It was decided in *Cushing* v. *Frankfort*, 57 Maine, 541, that the bounties voted at the last named date were legal claims against the town. Therefore this amount, with perhaps an exception to be hereafter noticed,

was properly paid and was a debt due from the town at the date of the act of separation. Still, it is claimed that the part set off is not liable, because it is not found in the report of Mr. Woodman. In terms it is not there; but in the report we find, among the contingent claims, or, in other words, those "the precise amount of which could not then be determined," certain specified orders for bounties issued under a vote of the town, passed March 6, 1865. It is true, as contended by counsel, that these orders were void by reason of the illegality of the meeting at which the vote authorizing them was passed, and were so held in *Clark* v. *Wardwell*, 55 Maine, 61. It is also true that the same persons to whom they were issued, had claims for the same amount and for the same services, under the vote of January 28, 1865, and these orders were, in fact, only the evidence of such claims and intended as such.

While, then, the orders were of no binding force, the debt represented by them was valid. The orders were merely the form, the claims upon which they were founded the substance. Therefore the report of the commissioner does show this debt, not the amount indeed, but an amount which has since been "determined" and no wrong is done, no principle of law is violated in holding the territory set off liable for its share of this item. On the other hand, it is in strict accordance with well settled principles of law that a void security given for an existing debt does not discharge it, but in such cases a claim under the void security may be substituted by the valid debt. *Perrin* v. *Keene*, 19 Maine, 355; *McVicker* v. *Beedy*, 31 Maine, 314.

But it is contended that two of these claims, those of Wheelden and of Colson, are exceptions to this rule, and should not be allowed, because the original claims were invalid. It is said they were drafted men and in the service at the time of the vote of January 28, 1865. This may all be true and yet their claims be valid. The vote was sufficiently comprehensive to include them under the decision in *Hart* v. *Holden*, 55 Maine, 574; and under the authority of *Railroad Co.*, v. *Brooks*, 60 Maine, 568, the

article in the warrant was sufficient. So far as the facts show, no illegality in these claims appears. The payment may, for ought shown by the testimony, have been for future services. If the plaintiff would avail himself of any illegality, the burden is upon him to show it.

But admitting this item, or any part of it, to be somewhat questionable as to its binding force as a debt, we must still come to the conclusion, under the facts shown by the case, that the territory is bound to pay its share.

The debt, as already seen, was reported by the commissioner as one the amount of which was subsequently to be "determined." By § 4 of the act, the territory and inhabitants were to pay their proportional part when determined. By whom was this amount to be ascertained? No tribunal is named. Any legal determination then must be sufficient. Here was a debt disputable, perhaps, but returned as a debt by the legally appointed commissioner, part of which, and a part which was supposed to represent the whole, had been judicially held valid. Under these circumstances shall the town, liable to pay the largest portion, be compelled, at a large expense, to litigate and obtain a judgment of court upon each item before it can enforce a tax upon its inhabitants for its payment? We think not. They would clearly have the right to settle this as any other disputed claim against them, thus saving the cost, vexation and uncertainty necessarily attendant upon litigation; provided, of course, that it is done in good faith and in the exercise of sound discretion. This they have done, so far as appears, and it should be final.

It would hardly be contended that any citizen of Frankfort could recover of the town a tax assessed for the payment of this debt as a sum "not raised for a legal object;" and, as already seen, by the provisions of the act, the tax payers set off remain a part of the town for the assessment of taxes with the same rights and liabilities as the remaining citizens, in relation to these debts.

Another item assessed and objected to, is the expense of collection. In this respect the collector was allowed for collecting

this tax the same as for collecting that part assessed upon the town. If these assessments were to continue till the debts were paid, we can see no well-founded objection to this allowance. This, with the necessary abatements, are unavoidable incidents to this method of paying any particular sum and are to be taken into consideration when the amount to be assessed is fixed. Otherwise, the tax would not pay the sum required. Though these incidents are not especially provided for in the act, it must be understood that the legislature, in providing this method of paying the amount to be raised, intended to include the usual and proper means for accomplishing the object. Had those set off remained in the town, they would have been liable to this expense. There is nothing in the act tending to show that the legislature intended to lighten these burdens in this respect, but rather the contrary ; for as already seen, for this purpose they remained a part of the town.

The remaining two items objected to, viz : the percentage charged to the territory and its proportion of the Belfast execution making about fifty-eight dollars are admitted to be erroneous. But to offset these, the case finds that there have been expenses and abatements, not charged in the account, amounting to about one hundred and seventy dollars. Allowing these last items, as they should be, we find the tax is no more than the legal liability, and no part of it assessed for an object not legal.

*Judgment for the defendants.*

APPLETON, C. J., DICKERSON, VIRGIN, PETERS and LIBBEY, JJ., concurred.